UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CARGILL, INCORPORATED,<br><br>                  Plaintiff,<br><br>      v.<br><br>CANBRA FOODS, LTD., et al.,<br><br>                  Defendants. | No. CV03-1209-MO<br><br>ORDER RE: MOTION FOR JUDGMENT THAT '169 AND '145 PATENTS ARE UNENFORCEABLE FOR CARGILL'S INEQUITABLE CONDUCT |

**MOSMAN, J.,**

      Defendants move this court for a judgment that the '169 and '145 patents are unenforceable in their entirety, due to inequitable conduct by Cargill in obtaining the patents. The alleged inequitable conduct consists of withholding information about IMC 129 that would cast doubt on Cargill's claim about the dramatic improvement of IMC 130 over IMC 129. Because I find defendants have established materiality and intent, and because of the centrality of the withheld information to the issue before the PTO, the motion is granted.

<u>Legal Standard</u>

      Defendants must prove inequitable conduct by clear and convincing evidence. This requires independently establishing both materiality (in this case, of withheld information) and intent to deceive or mislead the United States Patent and Trademark Office ("PTO"). Even if both are shown, inequitable conduct is not a foregone conclusion. *Critikon, Inc. v. Beeton*

*Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed. Cir. 1997).

While the issue of materiality was submitted to the trial jury, its verdict on this point was advisory only. Rule 52(a) requires the court to find the facts underlying materiality independent of the advisory jury.

## Materiality

I will focus on the evidence the jury found material. This includes IMC 129 AOM valves of 32, 32 and 35 from the 1991 and 1992 coops, reported in the 1992 Chemistry Research Report, and the twelve-day Schaal oven data.

Defendants contend this omitted data goes to the core of the debate between Cargill and the PTO - - whether IMC 130's oxidative stability really is strikingly different from IMC 129's. They contend that over the course of time, and five separate presentations to the PTO, the issue was whether Cargill, with IMC 130, had come up with oxidative stability so much better than IMC 129 that it could not be explained by the fatty acid profile.

The focus of plaintiff's response is that the data is not material because it is not reliable. Plaintiff provides various explanations as to why the omitted data is actually not inconsistent with the data presented to the PTO.

Not every test result which, on its face, appears inconsistent with the applicant's presentation to the PTO is material. See *Monsanto Co. v. Bayer Bioscience N.V.,* 363 F.3d 1235 (Fed. Cir. 2004) (dealing with materiality in context of summary judgment). Where the ostensibly inconsistent data is fully negated by an obvious explanation (such as faulty equipment) then its omission may be immaterial.

But the key is that the explanation is obvious and non-debatable. Where there is

inconsistent data, and where the applicant believes there is an explanation that reduces or eliminates the inconsistency, and where that explanation is debatable rather than obvious, disclosure is warranted. *LaBounty Mfg. Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) ("Close cases should be resolved by disclosure, not unilaterally by the applicant.").

I find this case falls within the latter proposition. I have reviewed the evidence and the explanations - - dealing, for example, with bench refinement, frost damage, OSI values, and 12-versus 15-day testing. I find plaintiff's explanations for the apparent inconsistency to be at best debatable, and that it was therefore incumbent on plaintiff to disclose the data and debate it with the PTO. Instead, plaintiff unilaterally withheld information that unquestionably would have been viewed as worthy of serious consideration by the PTO, and might have resulted in the patents not being issued.

This raises a related issue: at what point is materiality evaluated? Do I determine whether the information would have been viewed as important by the examiner? Or should I now look at the debatable information and resolve the debate? In other words, can a plaintiff avoid the principle in *LaBounty* by later persuading the district court that (1) had the information been disclosed, and (2) had the examiner been provided with the applicant's mitigating explanation, then (3) the explanation would have been found correct and sufficient, so that therefore (4) the omitted information is not material? Put differently, if the applicant omits ostensibly material information, can it later provide an explanation which, if believed, negates materiality?

No. This would defeat the general purposes of disclosure, and leave to chance whether

the mitigating explanation would ever be requested. In my view, apparently inconsistent information must be disclosed and explained, unless the apparent inconsistency is negated by an explanation so obvious as to not be fairly debatable. And a purely post hoc explanation cannot negate materiality, although it may go to the overall issue of inequitable conduct.

Intent

It is important to be specific about the intent at issue. In general, it is an intent to deceive or mislead the PTO. In this case, it is the intent to get the examiner to approve the patents, while deliberately withholding information that could cause her to decide otherwise. It is not necessary for defendants to prove Dr. DeBonte did not believe the patents were valid. Dr. DeBonte may well have believed that if the patent examiner saw the inconsistent data, and was unpersuaded by his explanation, that the examiner would be making a huge mistake. But that is beside the point. Whatever his beliefs about the bona fides of his patent application, the issue is whether he intended to deceive the PTO about the actual state of the evidence relevant to that application.

Of course, to intend to deceive the PTO about an omitted fact he had to know it. There is no dispute about his knowledge of any of the information with the exception of the 12-day Schaal oven testing data. Plaintiff argues that defendants have not sufficiently linked Dr. DeBonte to the 12-day Schaal oven test data. I find defendants have met their burden of proof on this point. The document containing the data bore his name, which he admitted would indicate it was his copy. The data went to a vitally important issue in the patent application process. Dr. DeBonte stated at his deposition, "I've probably seen this data." In the absence of any serious contradiction, this evidence is sufficient to show Dr. DeBonte's awareness of the

data.

Intent to deceive, like any mens rea, is usually inferred from circumstantial evidence. *Purdue Pharma L.P. v Endo Pharm. Inc.*, 410 F.3d 690, 700 (Fed. Cir. 2005). There are several circumstantial factors that are important here, including whether the omissions were repeated, whether they concerned a central issue, and whether there was a motive to conceal. On all of these points, I find defendants have shown, by clear and convincing evidence, the factual support for plaintiff's intent to deceive.

It is undisputed that the omission was repeated: That is, there were several occasions that called for disclosure of the omitted data, but plaintiff failed to do so.

Plaintiff's argument against the centrality of the omitted information is that such information is unimportant once it is explained. I have rejected that argument in analyzing materiality, and I reject it again here. Setting that argument to one side, there is no question the omitted information goes right to the heart of the question that bedeviled the examiner: the nature of the difference between IMC 129 and IMC 130. More than anything else, it is the omitted data's high degree of relevance that points toward an intent to conceal it from the PTO.

There was also a motive to conceal. Plaintiff contends that if, as the omitted information suggests, IMC 129 was as good, or nearly as good, as IMC 130, then Cargill would have been happy to promote IMC 129 instead - - in part because it out-yielded IMC 130. Cargill did not do so, according to plaintiff, because it knew - - even in light of the omitted evidence - - that IMC 130 was better.

But this argument fails to rebut a motive to conceal. Cargill, and Dr. Debonte, did believe IMC 130 was better than IMC 129. And they were right, at least on the evidence before

PAGE 5 - ORDER

me. But producing a better, longer lasting strain of oil, one that would be more attractive to customers, would not have gotten Cargill a patent. A patent required something more than an incremental improvement. But the omitted data stood in the way of portraying IMC 130 as something more than an incremental improvement. Thus, Cargill had a powerful financial motive to conceal the omitted data.

## Inequitable Conduct

Once materiality and intent are established, it is necessary to evaluate all the circumstances of the case to determine if the conduct is so culpable that the patent should be unenforceable. I have already determined that the omitted information was highly material. And I have found clear evidence of intent to conceal or deceive.

On the other hand, in light of my own observations of Dr. DeBonte and all the other evidence, I think it highly likely he omitted the information because he concluded it could be explained away. While this state of mind greatly reduces his moral culpability - - i.e., he wasn't trying to be sneaky and obtain a patent he didn't believed he'd earned - - it doesn't help much on the question of inequitable conduct. He took a short-cut; he unilaterally withheld information in a process that depends on disclosure to work. It is perhaps, a little like a debtor in bankruptcy not disclosing certain transactions because he believes he has a good argument they did not result in any income.

The inequity - - the unfairness - - lies in not disclosing that which the applicant thinks he can explain. Inevitably, applicants will rationalize nondisclosure by saying that it doesn't matter, because the explanation the applicant made to himself is correct, and would inevitably have been accepted by the examiner. But that is not how the system works.

It may be appropriate, even in a nondisclosure case, nevertheless to enforce a patent where the post hoc explanation is ultimately persuasive. But this is not such a case. After reviewing the prosecution history, it seems clear the examiner would have found the omitted information very important to her deliberations. Whatever the outcome of those hypothetical deliberations would have been, the important point for today's purposes is that plaintiff took steps to see that they never happened. This was inequitable conduct, and justifies non-enforcement of the patents so obtained.

## Conclusion

For the reasons given above, defendants' motion for judgment that the '169 and '145 patents are unenforceable due to inequitable conduct is GRANTED.

IT IS SO ORDERED.

DATED this   20th   day of December, 2005.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Judge